IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | |
| VALLEN DISTRIBUTION, INC. d/b/a HAGEMEYER NORTH AMERICA, INC. , | COMPLAINT |
| | JURY TRIAL DEMAND |
| Defendant. | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on a disability, and to provide appropriate relief to Wesley Smith ("Smith"), who was adversely affected by such practices. The U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Vallen Distribution, Inc. d/b/a Hagemeyer North America, Inc. ("Defendant") discriminated against Smith when it denied his request for a reasonable accommodation and then discharged him because of his disability and in

1

retaliation for requesting a reasonable accommodation for his disability, in violation of the ADA, as amended.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6 and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Georgia, Augusta Division.  Venue is proper in this Court under 28 U.S.C. § 1391.

## PARTIES

3.  Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) and Section 503(c) of the ADA, 42 U.S.C. § 12117(a) and § 12203(c), which incorporate by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a corporation doing business in the State of Georgia and the city of Augusta/Richland County, and has continuously maintained at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Wesley Smith filed a Charge of Discrimination with the Commission alleging violations of the ADA by Defendant.

8. On March 16, 2018, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On July 3, 2018, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11. Since on or about August 4, 2015, Defendant has engaged in unlawful employment practices at its Augusta, Georgia warehouse facility in violation of Section 102 of the ADA, 42 U.S.C. §12112(a) and (b).

12. Smith is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Smith suffers from prostate cancer which substantially limits him in the operation of major bodily functions, including normal cell growth.

13. Smith began his employment with Defendant on a temporary basis on November 11, 2014.

14. Defendant permanently hired Smith as a Warehouse Worker/Driver on June 15, 2015.

15. On June 25, 2015, Smith was diagnosed with prostate cancer and was informed by his doctor that he would need to undergo surgery as part of his treatment.

16. On June 26, 2015, Smith notified Respondent's Warehouse Manager of his disability and need for surgery.

17. During this conversation, the Warehouse Manager inquired how long Smith expected to be out of work and when he would be returning to work. Smith responded that he was not sure and was waiting to receive more information from his doctor, including the date his surgery would be scheduled and the estimated recovery time.

18. Smith then asked about his leave, and the Warehouse Manager agreed to check with Respondent's Human Resources Office at Respondent's headquarters in Charleston, South Carolina and follow up with Smith.

19. That same day, Smith spoke to Respondent's warehouse associate responsible for employee accounts and conveyed the same information he provided to the Warehouse Manager regarding his disability, upcoming surgery, and expected recovery time. In response, Respondent's employee accounts representative advised Smith not to worry about his job and assured him that he would not be terminated for taking a leave of absence to undergo surgery.

20. On July 14, 2015, Smith learned that his surgery had been scheduled for August 5, 2015, and communicated that information to the Warehouse Manager.

21. The Warehouse Manager asked Smith how long he expected to be out of work. In response, Smith informed him that, based on his medical provider's estimate, his recovery time would be approximately four (4) to six (6) weeks. Smith assured the Warehouse Manager that he would work until August 4, 2015.

22. Smith was aware that he was ineligible for short-term disability or a medical leave of absence under FMLA and understood that he would need to take an unpaid leave of absence for his surgery.

23. Sometime between July 14, 2015 and August 4, 2015, unbeknownst to Smith, Defendant hired an individual to permanently replace him. Smith, however, was specifically told that this individual would simply be filling in for him while he was on leave.

24. On the morning of August 4, 2015, the day before his scheduled surgery, Smith arrived at work and was preparing to leave for his daily route when he was informed that the Warehouse Manager wanted to meet with him at the end of the day. Smith worked a full day as usual.

25. Upon completing his route that day, Smith returned to the office to meet with the Warehouse Manager. When he saw the Warehouse Manager, the Warehouse Manager directed him to Defendant's Location Manager's office.

26. Smith went to the Location Manager's office and met with Respondent's Location Manager and the Warehouse Manager. During this meeting, the Warehouse Manager informed Smith that he could not take time off without vacation leave to cover the time he would be out for his surgery because Defendant needed someone physically on site to drive and make deliveries.

27. The Warehouse Manager also informed Smith that Defendant was terminating him effective August 4, 2015, because Defendant could not wait four (4) to six (6) weeks while he recovered from surgery.

28. While discussing Defendant's inability to grant Smith's request for unpaid medical leave, Defendant's Location Manager stated that it took his friend who had surgery for prostate cancer four (4) to six (6) months to recover, not four (4) to six (6) weeks.

29. The Warehouse Manager then informed Smith that he could reapply after his medical provider released him to return to work and he had gone to all his follow-up appointments, if there was an opening available.

30. When Smith asked if he would have to reapply and become a temporary employee again, the Warehouse Manager responded, "Yes."

31. Smith also asked if he was eligible to receive unemployment benefits, and the Warehouse Manager responded, "No." Smith thanked both for the opportunity and walked out of the office quietly.

32. Smith's doctor released him to return to work without restrictions on September 24, 2015, seven weeks after his surgery.

33. Following Smith's termination, Defendant hired a second employee to replace him.

34. The effect of the practice(s) complained of above has been to deprive Smith of equal employment opportunities and, otherwise, adversely affect his status as an employee because of his disability.

35. The unlawful employment practices complained of above were intentional.

36. The unlawful employment practices complained of above were done with malice or with reckless indifference to Smith's federally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all other persons in active concert or participation with it, from terminating any employee based on an actual disability, denying them reasonable accommodations requested under the ADA due to their disability, terminating them in retaliation for requesting a reasonable accommodation, and engaging in any other employment practices that discriminate on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Smith whole by providing appropriate back pay with pre-judgment interest, front pay, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement.

D. Order Defendant to make Smith whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in an amount to be determined at trial.

E.  Order Defendant to make Smith whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including inconvenience, emotional pain and suffering, loss of enjoyment of life, depression, anxiety, stress, and humiliation, in amounts to be determined at trial.

F.  Order Defendant to pay punitive damages to Smith for its malicious and/or reckless conduct described above, in an amount to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

        Respectfully submitted,

        JAMES L. LEE
        Acting General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel

        ANTONETTE SEWELL
        Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Supervisory Trial Attorney

s/James W. Allen
James W. Allen
Trial Attorney
Georgia Bar No. 016075
james.allen@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Savannah Local Office
7391 Hodgson Memorial Drive, Suite 200
Savannah, Georgia 31406-2579
(912) 920-4486     (phone)
(912) 920-4484     (facsimile)